FILED

**May 12, 2015**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM



# COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

| | | |
|---|---|---|
| Cynthia King, | ) | **DOCKET #: 2014-06-0062** |
| Employee, | ) | **STATE FILE #: 90963-2014** |
| v. | ) | **DATE OF INJURY: November 7, 2014** |
| Letica Corporation, | ) | **Chief Judge Switzer** |
| Employer, | ) | |
| and | ) | |
| The Hartford, | ) | |
| Insurance Carrier/TPA. | ) | |

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on May 7, 2015, upon the Request for Expedited Hearing filed by Cynthia King (Ms. King), the Employee, on April 1, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Letica Corporation (Letica), is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. King is not entitled to the requested benefits at this time.

## ANALYSIS

### Issues

*Whether Ms. King sustained an injury that arose primarily out of and in the course and scope of her employment with Letica.*

*Whether Ms. King is entitled to past or future total or partial disability benefits, and if so, in what amount.*

### Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Medical records of Cynthia King

1

- Affiliated Neurologists (1 page), nerve conduction study (missing a page), November 10, 2014
- Comprehensive Pain Specialists (1 page; appears to be missing other pages), December 9, 2014
- John Dana, PA-C, (3 pages) November 21, 2014
- Dr. Gregory Fryer, (6 pages) November 11, 2014
- Dr. Douglas Weikert, (3 pages) December 29, 2014

2. Form C-42, Choice of Physician, December 4, 2014
3. Form C-41, Wage Statement (amended), Feb. 23, 2015
4. Form C-23, Notice of Denial, January 29, 2015
5. Voice recording, Dr. Weikert, December 29, 2014.

The Court designated the following as the technical record:

o Petition for Benefit Determination (undated)
o Employee's position statement (email to mediator), March 20, 2015
o Dispute Certification Notice, March 30, 2015
o Request For Expedited Hearing, April 1, 2015
o Employer's "Pre-Compensation Hearing Statement and Brief of Letica Corporation," April 23, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

The parties reached the following stipulations:

- The date of injury is November 7, 2014.
- Ms. King gave proper notice to Letica.
- Ms. King's average weekly wage, according to Wage Statement (Ex. 3) is $610.52, and therefore her compensation rate is $487.22 per week.
- Ms. King submitted a Request for Mileage Reimbursement seeking reimbursement for 103 miles, which Letica agreed to pay.

Ms. King provided in-person testimony.

**History of Claim**

Ms. King is a fifty-five (55) year-old resident of Montgomery County, Tennessee. She is employed with Letica as a shipping clerk, where her duties include data entry, typing and inventory control. She has worked for Letica for 23 years.

2

Ms. King testified that, while working on Nov 7, 2014, she experienced severe pain in her right wrist that spread into her hands. Her left wrist began to hurt as well. When Ms. King's pain prevented her from typing, she immediately signed off from her duties and, at approximately 1:10 p.m., explained the situation to Beverly Bell, Letica's safety coordinator. According to Ms. King, she told Ms. Bell she wanted to see a doctor, but Ms. Bell advised her to wait until she talked to a representative from Letica's carrier. Ms. King testified that, at approximately 2:53 p.m., she received a telephone call at home from Ms. Bell informing her that the insurer would not pay for her to see a physician, and that she would have to pay for a doctor visit herself. As a result, Ms. King did not seek medical care on that day.

Ms. King testified that Letica notified her on November 10, 2014, that it laid her off due to lack of work. She returned to work on December 5, 2014. Upon her return, Letica added shredding paper as an additional job duty.

On November 10, 2014, Ms. King underwent a nerve conduction study of her left upper extremity pursuant to treatment for an unrelated workers' compensation case (Ex. 1, p. 2). She testified that she experienced severe pain at that time.

On November 12, 2014, Ms. King saw her primary care physician, Dr. Gregory Fryer (Ex. 1, p. 3). According to Ms. King, he performed testing and suggested her pain could be due to carpal tunnel syndrome. He recommended that she wear wrist bands. Ms. King stated that on November 14, 2014, she received a call informing her that the nerve conduction study confirmed carpal tunnel syndrome in her left wrist.

Letica offered a panel from which Ms. King chose Dr. Douglas Weikert (Ex. 2). Ms. King saw Dr. Weikert on December 29, 2014 (Ex. 1, p. 13-15). She testified that she told Dr. Weikert about the shredding as a recent addition to her duties, and about the 2010 and 2011 workers' compensation injuries and related work restrictions. According to Ms. King, she told him about her inability to rest her wrists at work, and he responded that he would talk to her supervisors about rearranging her work station. She said that Dr. Weikert told her he would let her employer know, "[T]they was responsible to take care of this issue and he would take care of my arm," and, "They would make an appointment for me, and I could come back, and he could fix it. And then in his notes, he contradicted hisself. In his notes, he said that it's not work-related, and basically like I'm just making it up. And I'm not."

Ms. King recorded a portion of her conversation with Dr. Weikert on her telephone (Ex. 5). She did not tell Dr. Weikert she was recording their exchange and he was unaware that she was making the recording. She testified that she did not alter the recording in any way.

On the recording, Dr. Weikert explained to Ms. King that he was not allowed to

3

treat her at that point.[1] Ms. King acknowledged that, but added, "If you make a recommendation, you can treat me, right?" Dr. Weikert answered in the affirmative. Dr. Weikert later stated in the recording that he would discuss with Letica about "having somebody look at your worksite and see if there's an ergonomic way to set up your your (sic) keyboard, so that you're not, you know, this way or that way... ." In addition, Dr. Weikert explained in the recording, "The other thing they're going to ask me is, is this work-related? Is work the only reason you have this? *And yeah, I think, I'm going to kind of make it so that I want them to take care of this.*" (Emphasis added.)

In Dr. Weikert's December 29, 2014 report (Ex. 1, pp. 13-14), he recorded the following observations on physical examination:

> Light touch sensation is intact to all digits. She has negative Finkelstein's test in the left and right. Median nerve compression tests are unremarkable and Phalen's wrist flexion tests are negative. She has some discomfort and aching pain with palpation about the wrist palmarly and dorsally. There is no tenderness along her flexor sheath and she exhibits no locking or catching with composite flexion. Her elbow has no ulnar subluxation. Lhermitte's test and ROOS tests were both negative.

*Id.,* p. 13. Dr. Weikert concluded:

> [S]he has bilateral upper extremity pain, but would really not consider this specific for carpal tunnel syndrome. Her electrodiagnostic studies were incidental findings during the workup of her shoulder pain. She does not localize to her left carpal tunnel with respect to the source of her discomfort. My opinion, *she does not appear to have work-related carpal tunnel syndrome.* She has some general musculoskeletal discomfort. She may continue her same work duties. The distribution of her workday between clerical and shredding appears to be advantageous for her at this point. If her symptoms worsen, I would consider a diagnostic corticosteroid injection into her carpal tunnel, but at this point would recommend anti-inflammatories, continuing the same work schedule and wearing a splint as needed. There does not appear to be anything specific to either hand would (sic)

---

[1] Dr. Weikert's report mistakenly stated that Letica hired him to perform an independent medical examination, when in fact his role at this point was authorized treatment provider. The distinction is not determinative of the Court's decision, however, because in either role Dr. Weikert's task was to form an opinion regarding whether Ms. King's injury is work related.

be work related from my standpoint.

*Id.,* pp. 13-14 (Emphasis added).

Ms. King testified that she presently works, but the pain from her injury makes it hard to do her job. On cross-examination, she agreed that she told Dr. Weikert she does "light clerical work and some shredding." Ms. King conceded that, among the exhibits, no medical provider wrote an "off-work" slip for her. She further acknowledged that she has no medical evidence to contradict Dr. Weikert's report, other than the recording.

## Employee's Contentions

Dr. Weikert contradicted himself in his conversation with her and in his report. She has performed her job duties for 23 years in the same work area, performing tasks likely to lead to carpal tunnel syndrome, including repetitive typing.

## Employer's Contentions

Dr. Weikert made the statements on the recording after Ms. King's prompting. His assertion regarding setting an appointment meant that he can treat her under private health insurance. Dr. Weikert engaged in a "preliminary conversation" with her, but had not reached a final conclusion as chronicled in his report. He was likely considering both diagnosis and treatment options, both of which presented complicated issues due to Ms. King's previous injuries. His conclusion is clear: The injury is not work-related and is therefore not compensable.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that, "[u]nless the statute provides for a different standard of proof, at a hearing the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2014); *McCall v. Nat'l Health Care*

*Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

*Factual Findings*

Ms. King experienced severe pain in her wrists and hands on November 7, 2014. Letica offered a panel, from which she selected Dr. Weikert as the authorized treatment provider. Dr. Weikert found in his report that the injury is not work-related.

*Application of Law to Facts*

The Workers' Compensation Law defines "injury" to include cumulative trauma conditions such as carpal tunnel syndrome or any other repetitive motion condition arising primarily out of and in the course and scope of employment. Tenn. Code Ann. § 102(13) (2014). The statutory definition further states that, "An injury 'arises primarily out of and in the course and scope of employment' *only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]* Tenn. Code Ann. § 102(13) (B)(2014) (emphasis added).

Tennessee law requires an employer to furnish, free of charge to the employee, such medical treatment as ordered by the attending physician made reasonably necessary by the injury. Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). In addition, in any case when the employee has suffered an injury and expressed a need for medical care, the employer "shall designate a group of three (3) or more independent reputable physicians … from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2014). Further – and central to the outcome of this matter at this time – the Workers' Compensation Law states, "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), *shall be presumed correct on the issue of causation* but this presumption shall be rebuttable by a preponderance of the evidence[.]" Tenn. Code Ann. § 50-6-102(13)(E) (2014) (emphasis added).

In the case, Ms. King credibly testified that she experienced an onset of pain in her wrists and hands on the date of injury and has experienced constant pain ever since. A claimant's assessment of his or her physical condition is competent testimony and may not be disregarded. *Uptain Constr. Co. v. McClain*, 526 S.W.2d 458, 459 (Tenn. 1975).

Letica provided a panel as required by section 50-6-204 (a)(3)(A)(1), from which Ms. King chose Dr. Weikert as the authorized treatment provider. Dr. Weikert unambiguously concluded in his December 29, 2014 report that Ms. King's injury is not work-related. He stated that twice. Under section 50-6-102(13), Dr. Weikert's opinion is presumed correct on the issue of causation.

6

Ms. King presented no medical evidence to rebut Dr. Weikert's written findings by a preponderance of the evidence, other than Dr. Weikert's verbal statements to her conveyed during his examination. She correctly points out that Dr. Weikert's words and subsequent report contain troubling contradictions, including, "I think, I'm going to kind of make it so that I want them to take care of this." It was entirely reasonable for Ms. King to be under the impression that he was prepared to make a finding of work-relatedness from those words. The Court sympathizes with Ms. King's frustration when he proceeded to make a contrary written finding. Nonetheless, this Court cannot disregard the conclusions reached in Dr. Weikert's report, especially in light of the fact he bases his conclusions upon detailed objective test results and clinical observations that include, but are not limited to, the Finkelstein's test, median nerve compression tests, and Phalen's wrist flexion tests.

In conclusion, Ms. King failed to demonstrate that she would likely prevail at a hearing on the merits and, accordingly, at this time the Court denies her requests.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. King's claim against Letica and its workers' compensation carrier for the requested medical and temporary disability benefits is denied on the grounds of compensability at this time.

2. Letica shall promptly reimburse Ms. King's mileage request relative to her visit with the authorized treating physician.

3. This matter is set for Initial Hearing on July 14, 2015, at 9:30 a.m.

**ENTERED this the 12th day of May, 2015.**

**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

7

<u>Initial Hearing</u>:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note:** <u>**You must call in on the scheduled date/time to participate.**</u> **Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

8

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of May, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Cynthia King, Employee | x | | | | x | 2un4getable@gmail.com |
| Fred Hodge, employer's attorney | | | | | x | Fhodge@howell-fisher.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
WC.Court.Clerk@tn.gov

9